## STATE OF VERMONT
## SUPERIOR COURT — ENVIRONMENTAL DIVISION

| | |
|---|---|
| In re: Blake – Lake Dunmore Road Zoning Permit Application Appeal.[1] | Docket No. 60-4-10 Vtec (Appeal from Salisbury DRB Decision on Application No. 2010-01) |

**************************************************************************************

| | |
|---|---|
| In re: Blake – Lake Dunmore Rd. Permit Declaratory Judgment Action.[2] | Docket No. 153-10-11 Vtec |

## Judgment Order

These two coordinated matters were set for trial on Thursday, November 29, 2012 at the Mahady Courthouse in Middlebury, Vermont. Prior to trial, the Court conducted a site visit with the parties at the subject property: 2709 Lake Dunmore Road in Salisbury. At the completion of the trial, the Court took a brief recess for deliberation and then reconvened the hearing to render its Findings of Fact and Conclusions of Law on the record of the hearing. This Judgment Order is issued to summarize the legal conclusions rendered by the Court; a more detailed explanation of the Court's legal conclusions and all of its Findings of Fact may be gleaned from the audio recording that constitutes the hearing record.

Based upon the Findings of Fact determined by the Court at hearing, including those facts that were given context by the site visit that the Court conducted with the parties, the Court announced its legal determinations at the Nov. 29, 2012 trial. Those legal determinations are hereby summarized as follows:[3]

---

[1] This appeal was originally captioned by the Court as "Blake/Lake Dunmore Rd. Variance." However, the Court decided at trial to change the appeal's title when it became apparent that the pending application had not requested a variance from the applicable zoning provisions.

[2] This declaratory judgment action, as noted below, seeks a determination of the rights and obligations under a certain December 8, 2008 zoning permit issued to Mr. Blake. The declaratory judgment action was originally filed with the Civil Division of the Superior Court—Addison Unit. That Court, however, dismissed that action, concluding that the action was more "properly raised in the Environmental Division in his appeal of the DRB's decision that is currently pending before the Environmental Division in Docket No. 60-4-10 Vtec." Blake v. Town of Salisbury, No. 162-8-11 Ancv, slip op. at 5 (Vt. Super. Ct. Civ. Div. Oct. 14, 2011) (Toor, J.). Appellant Blake thereafter filed his declaratory judgment action with this Court. In response to Appellant Blake's motion for summary judgment, this Court determined that the declaratory judgment action was within this Court's jurisdiction, but concluded that a dispute of material facts prohibited the entry of summary judgment. In re Blake – Lake Dunmore Declaratory J., No. 153-10-11 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jul. 25, 2012) (Durkin, J.).

[3] After the Court announced its legal determinations, both parties raised questions. The Court therefore provided the parties with an opportunity to offer suggested language to clarify the Court's

**I.    Declaratory Judgment Action** (Docket No. 153-10-11 Vtec):

By his declaratory judgment action, Applicant-Appellant Jonathan Blake ("Applicant") asks this Court to rule that a previous zoning permit, issued by the Town of Salisbury Zoning Administrator ("ZA") on December 8, 2008 (Zoning Permit No. 08-62, a copy of which was admitted at trial as Exhibit 3), authorized Applicant Blake to construct a 24-foot by 32-foot replacement residential structure on his property at 2709 Lake Dunmore Road. Applicant's property contains 2± acres, the majority of which is located east of Lake Dunmore Road, across the Road from Lake Dunmore; a small portion of Applicant's property is located west of Lake Dunmore Road, adjacent to Lake Dunmore. A copy of a portion of a survey of Applicant's property was admitted at trial as Exhibit 7.

Applicant did not detail the size of the replacement structure or include a site plan with his 2008 application (Exhibit 2) and neither the ZA nor Appellant Applicant took specific measurements of the original structure before Applicant demolished the original structure.

The ZA visited the site just after the original structure was demolished. At that time, Applicant disclosed that he also intended to construct the replacement structure at a slightly different location on the site, and that he wished to construct a larger front porch attached to the replacement structure than had existed on the original structure. He also informed the ZA at the time of this post-demolition site visit that he wished to construct a rear deck, attached to the replacement structure; the original structure had no rear deck.

Applicant had not provided the ZA with a site plan or disclosed other details of his planned replacement structure. The parties agreed at trial that the original structure did not conform to the current road setback for the Lakeshore Zoning District (§ 2.4.4(C) of the Town of Salisbury Unified Development Regulations, enacted May 29, 2009[4] ("Regulations")). A copy of the Regulations was admitted at trial as Exhibit 13.

At the post-demolition site visit, after having learned that Applicant intended to construct the replacement structure in a different location, the ZA directed Applicant to cease construction and to apply to the Town of Salisbury Development Review Board ("DRB") for approval of his plans. Applicant complied with the ZA's directives.

determinations. This Judgment Order is issued after the period of time expired for the parties to submit suggested language.

[4] An earlier version of the zoning regulations (a copy of which was admitted at trial as Exhibit 12) governed Applicant's 2008 applicant and permit, but did not govern his later application in 2010.

Based upon the facts presented at trial, the Court concluded that the zoning permit issued by the ZA on December 8, 2008 authorized Applicant to build a replacement structure, of the same size and in the same location as the original structure. To the extent that Applicant seeks to construct a replacement structure of a different size, or in a different location than the original structure, Applicant is obligated to first disclose the specific location and dimensions of his proposed structure in a zoning permit application and site plan submitted to the DRB and to receive DRB approval for his proposed structure; any additional front porch or rear deck would also need DRB approval. See Regulations § 240 ("no building or structure shall be erected, moved altered or extended . . . unless in conformity with the [R]egulations."). Applicant's request in his declaratory judgment action that the Court rule that the December 8, 2008 zoning permit authorized the re-located replacement structure is therefore **DENIED**.

II.     **2010 Zoning Permit Application** (Docket No. 60-4-10 Vtec):

Applicant subsequently applied for another zoning permit for his proposed re-located replacement structure, with an expanded front porch and a new rear deck. Applicant did not include a site plan with his new application, although he did state that he intended the replacement structure to be 24 feet by 32 feet. Exhibit 6. The application did not disclose the specific dimensions of the front porch or rear deck. His application did, however, disclose that Applicant intended to "move the new house 16–20 FT more west."[5]

Applicant's 2010 application (Exhibit 6) is the subject of this Docket No. 60-4-10 Vtec. Applicant appealed the DRB's denial of his request to be allowed to construct a replacement structure that was larger than his original structure; the original structure encroached into the front yard setback from Lake Dunmore Road. A copy of the DRB's March 17, 2010 Decision on Applicant's application was admitted at trial as Exhibit 9. The DRB authorized Applicant to locate his new house 20 feet farther to the north from the location of his original house, but conditioned its approval upon Applicant (a) submitting a site plan for his project that conformed to Regulations § 3.3(g); (b) submitting for DRB approval an engineered erosion control and drainage plan that conformed to Regulations § 4.1.4; (c) limiting the size of the new structure to that of the original structure, which the DRB determined to be 21' by 23'; and (d) submitting for approval the design and aesthetic characteristics of his replacement structure.

_____

[5] At trial, Applicant testified that he intended to locate the new house "about 20 feet" north of where the original structure was located. Exhibit 7 confirms that the direction in which Applicant intended to move the house location was north, not west; moving the house to the west would cause a further encroachment into the setback from Lake Dunmore Road.

By Question 1 of his statement of questions, Applicant sought approval for a replacement structure that was larger than his original structure. (Applicant's Statement of Questions at 1, filed Apr. 30, 2010.) By his Questions 3 and 4, Applicant also sought a variance or waiver for his enlarged replacement structure. Id. However, since Applicant did not request either a variance or waiver in his 2010 application, and the DRB therefore did not consider such requests, the Court disregarded Applicant's variance and waiver requests at trial and does hereby **DISMISS** Applicant's Questions 3 and 4.[6]

The Court announced at trial, after its deliberations and specifically in response to Applicant's Question 1, that Applicant's replacement house could not result in an increase in his house's encroachment into the road setback. In fact, due to the alignment of the house site with Lake Dunmore Road, moving the house location to the north by about twenty feet will not cause a further encroachment. However, increasing the structure's width or length could cause a further encroachment. The Court therefore concluded that the replacement structure could be no larger than the original structure.

There was conflicting evidence at trial about the actual dimensions of the original structure. The Court concluded that the most credible evidence was that the original structure, measured at its outer skin, was twenty-nine (29) feet long by twenty-three (23) feet wide,[7] with a roof that overhangs the exterior walls by one and a half (1 ½) feet on each side.

Applicant may also expand the front porch and add a new rear deck to the replacement structure, provided however that the porch expansion does not encroach into the road setback of thirty-five feet from the center line of Lake Dunmore Road, pursuant to Regulations § 2.4.4(C). The rear deck may follow the alignment of the western exterior of the replacement structure, provided that the final design and aesthetic specifications Applicant submits pursuant to Condition (d) below receives approval from the DRB; otherwise the new deck may not encroach into the road setback. See Regulations § 4.0.5(2) (providing that non-conforming

---

[6] By his Question 2, Applicant sought relief from this Court by alleging that the DRB had not made Findings of Fact adequate to support its determinations. However, since this Docket concerns a de novo appeal, the Court did not consider the adequacy of the DRB's Findings, but rather rendered its own Findings based upon the evidence presented at trial. 10 V.S.A. § 8504(h); V.R.C.P. 5(g). We therefore **DISMISS** Question 2.

[7] The length of the original structure ran in a north-south direction, somewhat parallel to the nearest section of Lake Dunmore Road, and the width ran in an east-west direction. The replacement structure must follow this same general alignment.

structures may not be expanded unless the DRB determines that the expansion "will not create greater cumulative impacts under the criteria used to evaluate conditional uses").

Applicant sought a clarification from the Court after it announced its legal conclusions at trial: Applicant asked if he would be permitted to change the dimensions of the replacement structure, conditioned upon it not creating a greater non-conformity with the setback or other zoning requirements. The Court calculated the current dimensions would provide a maximum building footprint of 667 square feet. The Town representatives expressed concern about changes to the structural dimensions causing additional delays in this already long permit application and appeal proceedings. The Court agrees with the Town in this regard, in that Applicant chose not to present alternate plans to the Court. Our ruling here does not, however, preclude Applicant from seeking approval for an alternate plan, but any material alterations from the dimensions presented to the Court would require Applicant to apply for an amendment to any permit that may issue as a consequence of this Decision.

For all these reasons, the Court **GRANTS** Applicant Jonathan Blake's application for approval for his replacement structure at 2709 Lake Dunmore Road, subject to Applicant satisfying the following conditions **within one year** of this Judgment Order **and prior to commencing any further construction**:

a.) Applicant must submit to the DRB for approval a site plan that is drawn to scale and complies with all requirements contained in Regulations § 3.3.

b.) Applicant must submit to the DRB for approval an erosion control and drainage plan, evidencing all such measures Applicant has completed during or since demolition of the original structure and any new erosion control or drainage work he intends to complete in connection with this project.

c.) The building footprint shall not exceed twenty-nine (29) feet long by twenty-three (23) feet wide, with a roof that overhangs the exterior walls by no more than one and a half (1 1/2 ) feet on each side. Any material changes to this planned structure must first receive additional approval from the DRB.

d.) Applicant must submit plans to the DRB for its approval that depict the design of the planned replacement structure, including colors, specifications, and materials to be used on the exterior of the structure. These plans shall be reviewed by the DRB for conformance with Regulations §§ 3.4.5(2) and § 4.1.5(4).

This completes the current proceedings before this Court concerning this appeal.

Done at Berlin, Vermont, this 28th day of January 2013.

_____
Thomas S. Durkin, Environmental Judge